

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 1 4 2015

CLERK, U.S. D......CT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ANITRA D. JACKSON,          §
    PLAINTIFF,          §
                  §
VS.          §          CIVIL ACTION NO. 4:13-CV-742-BJ
                  §
CAROLYN W. COLVIN,          §
COMMISIONER OF SOCIAL SECURITY,          §
    DEFENDANT.          §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.      STATEMENT OF THE CASE

Plaintiff Anitra D. Jackson ("Jackson") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits under Title II, and supplemental security income ("SSI") benefits under Title

XVI of the Social Security Act ("SSA").  On September 22, 2009, Jackson protectively applied

for social security benefits, alleging that her disability began on September 17, 2009.  (Transcript

("Tr.") 21, 142-50.)  Her applications were denied initially and on reconsideration, and Jackson

requested a hearing before an administrative law judge ("ALJ").  (Tr. 21, 82-100.)  An ALJ held

a hearing on May 4, 2011 and issued a decision on January 23, 2012 that Jackson was not disabled. (Tr. 18-77.)  On January 18, 2013, the Appeals Council denied Jackson's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 7–12.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20

C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.   *Id.* §§ 404.1520(e), 416.920(e).   Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.   *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999).   At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198.   If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment.   *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.   *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).   Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.   *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).   It is more than a mere scintilla but less than a preponderance.   *Id.*   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.   *Id.*   This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if evidence is present.   *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III.   ISSUES

In her brief, Jackson presents two issues to the Court:

1)      Whether the ALJ properly weighed and evaluated the opinions of Jackson's treating psychiatrist and treating counselor; and

2)      Whether the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence.

(Pl.'s Br. at 1, 3-10.)

## IV.   ADMINISTRATIVE RECORD AND ALJ DECISION

In her January 23, 2012 decision, the ALJ stated that Jackson had not engaged in any substantial gainful activity since September 17, 2009, the alleged onset date for her disability. (Tr. 23.)  The ALJ found that Jackson would be insured for disability benefits under Title II until December 31, 2014.  (Tr. 23.)  She further opined that Jackson had three "severe" impairments: bipolar disorder, obsessive compulsive disorder ("OCD"), and obesity.  (Tr. 23.)  The ALJ also found that Jackson had the impairments of hypertension and thyroid disorder, but, because these were effectively treated with medication, the ALJ found that these impairments were not severe. (Tr. 24.)  Next, the ALJ held that none of Jackson's impairments or combination of impairments met or equaled the severity of any impairment in the Listing.  (Tr. 24–25.)  As to Jackson's RFC, the ALJ stated:

> [T]he claimant has the residual functional capacity to perform light work[1] as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform only simple, routine work, that can be learned in 30 days or less; and she can have

---

[1] Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

incidental contact with coworkers and the general public, but cannot work directly
with the general public as part of her job duties.  The claimant can maintain work
at this level.

(Tr. 25 (emphasis added) (footnote added).)  The ALJ opined, based on this RFC assessment,

that Jackson was not able to perform her past relevant work.  However, the ALJ found that there

were jobs that existed in significant numbers in the national economy that Jackson could

perform. (Tr. 30-31.)  Consequently, the ALJ held that Jackson was not disabled.  (Tr. 30-31.)

## V.  DISCUSSION

### A. Treating Opinions

Jackson claims that the ALJ improperly weighed and evaluated the opinions of Daniel

Rousch, M.D. ("Dr. Rousch"), Jackson's treating psychiatrist, and Andrea Harbaugh, LPC ("Ms.

Harbaugh"), her treating counselor.  Specifically, Jackson claims that the ALJ rejected Dr.

Rousch and Ms. Harbaugh's opinions without applying the factors set forth in 20 C.F.R. §§

404.1527(c) and 416.927(c).  (Pl.'s Br. at 3-8.)  In addition, Jackson argues that the ALJ erred by

failing to specify what weight, if any, she gave to Dr. Rousch's opinion.  (Pl.'s Br. at 4.)

Controlling weight is assigned to the opinions of a treating physician if it is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and not

inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2); *Martinez*

*v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564,568 (5th Cir.

1983).  However, the determination of disability always remains the province of the ALJ, and the

ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which

includes disregarding statements that are brief and conclusory, unsupported by acceptable

diagnostic techniques, or otherwise unsupported by the evidence.  *Leggett*, 67 F.3d at 566;

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th

Cir. 1991). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." 209 F.3d 448, 453 (5th Cir. 2000); *see also* 20 C.F.R. § 416.927(c). Under the statutory analysis of 20 C.F.R. § 404.1527(c), the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. § 416.927(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than the another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v.*

*Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

### 1. Treating Physician Dr. Rousch

As set forth above, Jackson contends, in essence, that the ALJ did not give proper weight to the opinion of Dr. Rousch and that the ALJ was required to perform a detailed analysis of his opinions under 20 C.F.R. §§ 404.1527(c) and 416.927(c). (Pl.'s Br. at 3.) On April 14, 2011, Dr. Rousch completed a Medical Source Statement regarding Jackson. (Tr. 376–80.) In his statement, Dr. Rousch opined that Jackson was markedly limited in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination or proximity to others without being distracted by them; (5) complete a normal work-day and week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers and peers without distracting them or exhibiting behavioral extremes; (9) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (10) travel in unfamiliar places or use public transportation. (Tr. 377-78.) Dr. Rousch further found that Jackson: (1) was moderately restricted in her activities of daily living; (2) had extreme difficulties in maintaining social functioning; (3) had marked difficulties in maintaining concentration, persistence, and pace; and (4) had marked episodes of decompensation, each of

extended duration. (Tr. 379.) In addition, Dr. Rousch opined that sustained work activity would exacerbate Jackson's symptoms to the point that they would very likely cause Jackson to have excessive absences from work (at least 2 absences per month). (Tr. 380.)

After reviewing Dr. Rousch's treatment records and the April 14, 2011 medical source statement, the ALJ stated:

> The undersigned has considered this opinion as that of a psychiatrist who has treated the claimant for many years. However, she cannot accept this opinion as it is not supported by the probative evidence of record, including Dr. Rousch's own records. The doctor indicated at the time she was hospitalized in December 2010 and again in March 2011 that she had only recently deteriorated from her baseline of doing at least "ok" according to the doctor's records and she responded quickly to change in medication on each occasion. Further, the doctor's reports show few changes in her general mental status from the time that he began treating her in 2005, although she has been able to maintain long-term employment in the past.

(Tr. 29.)

Contrary to Jackson's arguments, the ALJ was not required to perform a detailed analysis under 20 C.F.R. §§ 404.1527(c) and 416.927(c) before rejecting Dr. Rousch's opinions in the medical source statement because such analysis is only required where there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *Newton*, 209 F.3d at 455–57. In this case, the ALJ found that Dr. Rousch's medical source statement was not supported by the probative evidence of record, including his own records. (Tr. 29.) As noted by the ALJ, Jackson was also examined by G.A. Jason Simpson, Psy.D. ("Dr. Simpson"), a licensed clinical psychologist,[2] on December 2, 2009. (Tr. 26-27, 255-61.) As to this examination, the ALJ stated:

---

[2] The Court notes that "[l]icensed medical or osteopathic doctors and licensed or certified psychologist are equally 'acceptable medical sources,' 20 C.F.R. § 404.1513(a), who can provide medical evidence to establish the existence of a medically determinable impairment, the severity of a claimant's impairment and how it affects her functional ability." *Redwine v. Astrue*, No. 12-2269, 2013 WL 3070850, at *11 (E.D. La. June 17, 2013).

8

> The Agency sent the claimant to a consultative psychological examination to help in the evaluation of her disability claim. This examination was performed in December 2009, by GA Jason Simpson, PsyD, a licensed clinical psychologist. The claimant said that she had had bipolar disorder since 2005. She asserted that she had periods of two weeks with no sleep followed by "sleep attacks" in the middle of activities. She acknowledged that her medication helped her condition "to some extent." She said that she could care for her own self care (including, in contrast to her hearing testimony, brushing her teeth). She said that she cooked for herself, ran errands, drove and shopped. She said that she was generally able to complete important tasks and follow instructions. On mental status examination, the claimant was mildly depressed and her affect was slightly blunted. Her speech was clear and her attention and concentration was normal. Her cognitive function appeared within normal limits and she was able to perform simple calculations. The claimant reported vague hallucinations, such as whispers and meows at times. Her memory appeared to be slightly impaired and her intelligence appeared normal. Dr. Simpson diagnosed bipolar disorder with atypical features, in partial remission, with a GAF of 60. He indicated that she could manage her own funds.

(Tr. 26-27; *see* Tr. 255-61.) Thus, Dr. Rousch was not the only treating or examining physician and the ALJ did not err in rejecting his medical source statement without applying the above-mentioned factors.[3] *Newton*, 209 F.3d at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001).

Jackson also argues that the ALJ failed to specify the weight that she was assigning to Dr. Rousch's opinions, contravening Fifth Circuit decisions and federal regulations. (Pl.'s Br. at 4-5.) However, the ALJ clearly stated that "she cannot accept [Dr. Rousch's] opinion," which indicates that the ALJ did not give his opinion any weight. Moreover, given that the ALJ did not incorporate any of Dr. Rousch's proposed limitations into her RFC determination, it is clear

---

[3] Even assuming the ALJ was required to perform a detailed analysis under Sections 404.1527(c) and 416.927(c), the Court finds that the ALJ did perform such an analysis. As to factors one, two, and five, the ALJ went through Dr. Rousch's treatment records, noting that he was a psychiatrist who had treated her for many years. (Tr. 29.) As to factors three, four, and six, the ALJ pointed out that Dr. Rousch's medical source statement was not supported by record evidence, including his own treatment records. (Tr. 29.)

that she did in fact reject his opinion. (*See* Tr. 25, 29.)[4] Because the Court finds that the ALJ did

not err in her rejection of Dr. Rousch's limitations opinions, remand is not required.

### 1. Treating Counselor Ms. Harbaugh

Jackson also contends that the ALJ did not perform a detailed analysis of treating

counselor Ms. Harbaugh's opinion under 20 C.F.R. §§ 404.1527(c) and 416.927(c) before

rejecting such opinion. Ms. Harbaugh completed a medical source statement on April 15, 2011.

(Tr. 358-62.) In the statement, Ms. Harbaugh opined that Jackson was markedly limited in her

ability to do the following: (1) remember locations and work-like procedures; (2) understand and

remember very short and simple instructions; (3) understand and remember detailed instructions;

(4) carry out very short and simple instructions; (5) carry out detailed instructions; (6) maintain

attention and concentration for extended periods; (6) perform activities within a schedule,

maintain regular attendance, and be punctual within customary tolerances; (7) work in

coordination with or proximity to others without being distracted by them; (8) make simple

work-related decisions; (9) complete a normal work-day and week without interruptions from

psychologically-based symptoms and perform at a consistent pace without an unreasonable

number and length of rest periods; (10) interact appropriately with the general public; (11) accept

instructions and respond appropriately to criticism from supervisors; (12) get along with

coworkers or peers without distracting them or exhibiting behavioral extremes; (13) maintain

socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (14)

respond appropriately to changes in the work setting; (15) be aware of normal hazards and take

---

[4] Even if the ALJ had failed to state the weight she was assigning to Dr. Rousch's opinion, such error would be harmless, as the Court's review of the record reveals the existence of substantial evidence supporting the ALJ's decision. *See Hammond v. Barnhart*, 124 F. App'x 847, 851-52 (5th Cir. 2005) (holding that an ALJ's failure to articulate the weight given to two state agency medical consultants was harmless error); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. . . . The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time").

appropriate precautions; and (16) travel in unfamiliar places or use public transportation. (Tr. 359-60.) In addition, Ms. Harbaugh opined that Jackson was moderately limited in her ability to: (1) sustain an ordinary routine without special supervision; (2) ask simple questions or request assistance; and (3) set realistic goals or make plans independently of others. (*Id.*) Ms. Harbaugh also found that Jackson (1) was extremely restricted in her activities of daily living; (2) had extreme difficulties in maintaining social functioning and concentration, persistence, or pace; and (3) had extreme episodes of decompensation, each of extended duration. (Tr. 361.) Finally, Ms. Harbaugh stated that Jackson "has extreme mood lability, obsessive compulsive behaviors which renders her completely unable to function." (Tr. 362.)

> As to Ms. Harbaugh's opinions, the ALJ stated:
>
> The opinions of Mrs. Harbaugh are afforded little weight based upon the short period during which she has counseled with the claimant. Moreover, the record does not indicate that the claimant is an acceptable medical source as the term is defined in the regulations, as she lacks the education and training requirements. The undersigned does not find that her opinion is well supported by the majority of the probative evidence as addressed throughout this decision.

(Tr. 29 (internal citations omitted).)

The ALJ is correct that Ms. Harbaugh is not an acceptable medical source that can provide evidence to establish an impairment and whose opinion is entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1); *see also Corpany v. Colvin*, No. 4:12-CV-878-A, 2014 WL 1255316, at *5 n.4 (N.D. Tex. Mar. 26, 2014); *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *11 n.14 (N.D. Tex. June 3, 2013). However, the ALJ "*may* also use evidence from other sources to show the severity of [the claimant's] impairment and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (emphasis added). In addition, Social Security Ruling ("SSR") 06-03p states that "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and

from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006).  In addition, SSR 06-03p indicates that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.*  While the ALJ *can* apply the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), "[e]ach case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id.* at *5.  "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

The ALJ's opinion in this case shows that she did specifically consider Ms. Harbaugh's opinions, as she briefly described them and determined that they were entitled to "little weight." (Tr. 29.)  In addition, the ALJ provided two reasons for this determination—that Ms. Harbaugh had counseled Jackson for only a short period and her opinions were not well supported by the majority of the probative evidence.  (Tr. 29.)  Thus, contrary to Jackson's claims, the ALJ properly evaluated Ms. Harbaugh's opinions and articulated appropriate reasons for assigning them little weight.[5]  Consequently, remand is not required as to this issue.

---

[5] Even if the ALJ was required to consider each of the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), this Court finds that she did so, to the extent allowed by the evidence.  As to factors one and two, the ALJ stated that Harbaugh was a licensed professional counselor that had counseled Jackson and noted the short period of such counseling.  As to factors three, four, and six, the ALJ found that probative evidence of record did not support Ms. Harbaugh's opinions.  (Tr. 29.)  As to factor five, the ALJ noted that Ms. Harbaugh was not an acceptable medical source and had no medical specialization.  (*Id.*)

## B. RFC Determination

Jackson also argues that substantial evidence does not support the ALJ's RFC

determination because the ALJ failed to recognize the full severity and limiting effects of all of

Jackson's impairments. (Pl.'s Br. at 8.)  Jackson claims that the "ALJ failed to evaluate [her]

mental limitations thoroughly and to consider the function-by-function limitations that resulted

from her mood lability, irritability and paranoia, low stress tolerance, and impaired memory and

concentration." (Pl.'s Br. at 9.)  Jackson further contends that the medical opinion evidence,

treatment records, and her own testimony show that she was considerably more limited than the

ALJ found, and, consequently, unable to perform competitive work. (Pl.'s Br. at 10.)

RFC is what an individual can still do despite her limitations.[6]  SSR 96-8p, 1996 WL

374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do

sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see*

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-

hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2.

RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function

assessment, with both exertional and nonexertional[7] factors to be considered, and is based upon

all of the relevant evidence in the case record. *Id.* at *3–5. The responsibility for determining a

claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).

The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and

---

[6] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[7] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

13

continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5.  The ALJ is permitted to draw reasonable inferences from the evidence in making her decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence.  *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children).  The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").  However, this Court need not reweigh the evidence in the record, but must only scrutinize the record to determine if evidence supporting the ALJ's decision is present.  *Harris*, 209 F.3d at 417; *Greenspan*, 38 F.3d at 240 ("[This Court's job] is not to weigh this evidence; that task is for the AJL.  As long as there is substantial evidence in the record as a whole supporting the ALJ's determination, . . . we must uphold that decision.").

In making her RFC determination in this case, the ALJ, *inter alia*, noted that Jackson attended a consultative psychological examination performed by Dr. Simpson.  (Tr. 26-27.)  The ALJ further stated the following: (1) that Dr. Simpson reported that Jackson's speech was clear

and her attention and concentration were normal; (2) that Jackson told Dr. Simpson that her medication helped her condition, she attended to her own self-care, including cooking, driving, and shopping, and that she was generally able to complete important tasks and follow instructions; and (3) while Jackson was mildly depressed and her affect was slightly blunted, Dr. Simpson found that her cognitive function appeared within normal limits and that she was able to perform simple calculations. (Tr. 26-27; Tr. 256-58.) The ALJ also observed that Dr. Rousch's February 2011 treatment notes stated that Jackson's energy, sleep, and concentration were normal, her mood was good, and her ability to work and care for her family was "ok." (Tr. 28; Tr. 340.)

In addition to the opinions of Dr. Simpson, the ALJ also reviewed the mental residual functional capacity assessments conducted by State Agency Medical Consultants Jean Germain, Ph.D. ("SAMC Germain"), and Mark Schade, Ph.D. ("SAMC Schade"). (Tr. 28-29, 276-80). As the ALJ discussed, SAMC Germain's assessment "indicates that the claimant is capable of understanding, remembering and carrying out detailed, but not complex, instructions," as well as "mak[ing] decisions, concentrate[ing] for extended periods, interact[ing] with others and respond[ing] to changes." (Tr. 28; *see* Tr. 276-79.) In addition, the ALJ noted that SAMC Schade agreed with SAMC Germain's assessment as written. (Tr. 28: Tr. 280.)

As noted above, evidentiary conflicts are for the Commissioner to resolve. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). In this case, the ALJ adequately explained the reasoning for her RFC determination and for giving less weight to certain evidence, and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into her RFC assessment that were most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility

for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required based on Jackson's general argument to the contrary.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **January 28, 2015**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously transferred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is **TRANSFERRED** to the docket of the United States District Judge.

SIGNED January 14, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE